**In the United States District Court**
**For the Eastern District of Pennsylvania**

Jimi Rose
      Plaintiff

   v.                                           No: _____
                                              **Jury Trial Demanded**
Walmart Corporation;                          **Emergency Status**
Jane Doe;
John Doe Security Guard 1;
John Doe Security Guard 2;
John Doe Security Guard 3;
John Doe Security Guard 4;
John Doe Security Assistant;
      Defendants

**Complaint**

**Jurisdiction**

1. This Honorable Court has Jurisdiction over these "Federal Civil Rights Violations".

2. This case and pleading must not be misconstrued or interwoven with State Court Proceedings because, the State Court Proceedings concern personal injury and have no place in Federal Civil Rights pleadings of which this Court has exclusive Jurisdiction over.

3. The Federal Civil Rights Violations occurred in the County of Lehigh, Pennsylvania by Walmart Corporation and its employees who knew or should have known the meaning of Federally Protected Civil Rights.

1

4. The Defendants maintain a practice and policy that is indifferent to the Civil Rights and Liberties of the Plaintiff.

5. The injuries complained of herein occurred on or about the 7th day of May, 2020, in the County of Lehigh, PA. In that, Defendants Walmart Corporation and its employees maintain a practice and policy that is indifferent to the Plaintiff's Civil Rights and Liberties.

6. Jurisdiction in this matter can be found in **Title 42 SS 1985(2) and (3), Title 42 SS 1981(a) and (c), Title 42 SS 1986, Title 42 SS 1988(c)**.

7. Plaintiff was denied his rights pursuant to the **1964 Civil Rights Act** which protects persons of Color who are abused by White Persons of authority who intentionally, willfully and deliberately discriminate against Persons of Color.

8. Defendants are guilty of maintaining a practice and policy which discriminates against Elderly persons and Disabled persons in violation of **Elder Abuse Laws.**

9. Plaintiff was stripped of his **14th Amendment Rights**, was stripped of his **1st Amendment Rights** and was subjected to cruel and inhumane punishment in violation of the **8th Amendment of the United States Constitution** by the Defendants, Walmart Corporation and its Security Employment Staff.

10. Walmart Corporation maintains a practice and policy that is indifferent to the Civil Rights and Liberties of **persons of Color, persons who have a Disability, and persons who are Elderly**.

11. Walmart Corporation and its stores in general maintain a practice and policy that is indifferent to the Plaintiff's Civil Rights and Constitutional rights as well as his human rights under international law. See **Universal Declaration of Human Rights** of which the Defendants knowingly, willfully and deliberately violated in their daily practice of business.

12. Defendants are guilty of **Elder Abuse** and abuse against **Americans with a Handicap and Disability**.

13. Records and video recordings will show that Walmart has a practice and policy during the pandemic which is indifferent to the Civil Rights and Liberties of the Plaintiff and his minor son.

14. This Honorable Court must not be confused; this is not a State Court Proceeding, this case is about human rights and civil rights, and not a personal injury. That matter is being handled in the State Court, but these Federal Claims must be entertained by this Court.

15. Plaintiff does not want to have this case fixed because, Walmart has a lot of money and they like to crush and kill the Civil Rights of oppressed people: this is their reputation. Walmart further likes to strongarm Federal and State Court Judges.

16. The thousands of lawsuits filed against Walmart always complain about human rights violations. In this particular case, these are Federally Protected human rights that the Plaintiff is arguing.

17. The Plaintiff is protected by virtue of the United States Constitution, in that, Plaintiff's Federally protected rights have been and continue to be violated by the Defendants and their employees.

## Brief Outline and History of Case

18. On or about May 7, 2020, Plaintiff, an Elderly Disabled Citizen was in the Walmart department store located at 1091 Mill Creek Rd, Allentown, PA 18106 shopping while being "Black" along with his son who is in the percentile and is legally classified to have Autism and is injured for the rest of his life due to his mental incapacity.

19. It must be noted that the Plaintiff has 2 bad lungs, a bad heart, high blood pressure, sugar diabetes and a bad kidney, and the Plaintiff was in the midst of the pandemic called Coronavirus which was highly contagious and is an airborne disease.

20. It must also be noted that the Plaintiff was under doctor's care for having anxiety and panic attacks and was being given medicine to control when he was having those attacks. This was prescribed to the Plaintiff by his doctor because, the Plaintiff was having a very hard and difficult time dealing with the pandemic and, in that, every day he lived his life in fear, isolated himself and sprayed his home inside and out with bleach every week to protect himself and his minor son from being infected with the Coronavirus.

21. The doctors will testify before this Court that the Plaintiff was being treated for his overwhelming fear of becoming contaminated with the Coronavirus. This is why the Plaintiff was placed on medication to help him with his panic attacks, anxiety attacks and his fears.

22. When the Plaintiff entered Walmart department store, there was no screening and most of the employees were not wearing face masks. At all times relevant, the employees from Walmart were reckless and dangerous to the health, safety and well-being of the Plaintiff and his minor son.

23. At all times relevant, Walmart did not have a system in place to protect the public from being exposed to its customers who may or may not have had the Coronavirus. Videotapes from Walmart will show that Walmart corporation did not have a policy in place to sanitize the shopping carts nor anything else. It was a free-for-all situation: travel at your own risk. Walmart never posted a sign to warn the public that the public would not be protected once the public entered into the four walls of Walmart stores.

24. While the Plaintiff and his minor son were standing in the checkout line, they encountered a Puerto Rican woman who was only about 2 feet in front of them and was telling her husband that his sister had "that s**t" referring to coronavirus. The woman then tried to get her husband to stand next to Plaintiff and his minor son, but the husband would not listen to his wife or girlfriend and backed away from the Plaintiff and his minor son.

25. The woman then stated she believed she may have contracted the coronavirus. At least this is what she was saying to her boyfriend or husband.

26. When the Plaintiff heard these remarks, the Plaintiff hit the panic button in his mind and became so terrified that the Plaintiff did not know which way to turn.

27. When the Plaintiff arrived at the self-checkout stand, the Plaintiff just started ringing things up, and he did not know what he was ringing up. The Plaintiff only knew he wanted to get out of harm's way, and that the Plaintiff was having a panic attack and did not have his medicine with him. The Plaintiff just wanted to get out of the Walmart store and out of danger.

28. The Plaintiff began ringing the items up in a fashion that he had no way of knowing what he was doing right or wrong. All the Plaintiff wanted to do was get away from the two people.

29. Plaintiff told his minor son they would have to go to the service counter to re ring the items up because, the Plaintiff did not ring the items up correctly because, the Plaintiff was in terrible fear for his life and the life of his minor son.

30. The Plaintiff then proceeded to walk to the service desk so he could re ring the items up that he may have missed or rang up several times.

31. The video tape will show that the Plaintiff's minor son who was extremely hyper, suffers from ticks and stimming. He runs everywhere because of his condition; he has no way of knowing what he is doing, he is under doctor's orders, and he is prescribed the drug Focalin issued by Dr. Clark, a psychiatrist.

32. When the Plaintiff noticed his son was going to the door, he called his son back to bring the cart to him so the Plaintiff could go to the service counter and pay for the items.

33. When the Plaintiff's minor son was walking toward the Plaintiff with the shopping cart, it was at this time a Black Security Guard stopped the Plaintiff's minor son and took possession of the shopping cart.

34. Plaintiff explained to the security guard that he was going to the service counter to pay for the items and that he had the money to pay for the items. The store security tapes will show the Plaintiff was standing in front of the service

5

department, and neither the Plaintiff nor his son ever left the store; therefore, there was no case of shoplifting.

35. The Plaintiff's minor son became so terrified of the black security officer, he started having anxiety attacks himself, and he started to cry and asked the Plaintiff why the security guard took the shopping cart away.

36. It was at this time the security guard instructed the Plaintiff to follow him to a holding area for people they intend to arrest.

37. No matter how many times the Plaintiff offered to pay for the items, the security guard kept saying, "We will see what we are going to do." Plaintiff presumes the security officer had to talk to someone; Plaintiff does not know.

38. In the meantime, the security guard took the Plaintiff and his minor son to a holding area which was no more than two feet wide, maybe two and a half feet with a camera directly in the face of the Plaintiff and his minor son.

39. The Plaintiff was forced to sit in this position for several hours while the security guard and his associate did not wear any mask and kept blowing their breath into the face of the Plaintiff and his minor son. The store security videotapes will show exactly what the Plaintiff is trying to describe.

40. It must be noted that the Plaintiff and his minor son did not have a cold, they were in perfect health on the day they were unlawfully detained because, at no time did the Plaintiff ever have a criminal intent to deprive Walmart of its property.

41. At no time did the Plaintiff's minor son ever exit the property of Walmart, but instead the Plaintiff did everything in his power to comply with the unlawful arrest of himself and his son.

42. Records and video recordings will show that Walmart has a practice and policy during the pandemic which is indifferent to the Civil Rights and Liberties of the Plaintiff and his minor son. At no time were the Plaintiff and his minor son ever offered water or the right to use the restroom.

43. Security videotapes will confirm that the Plaintiff and his minor son were treated less than human beings, this is exactly what the store security videotapes will show. The store security videotapes will show that Walmart had no protection in place to protect the customers and/or the public.

44. Walmart store personnel, namely the security guard and his crew, had every opportunity to protect the Plaintiff and his minor son but failed to do so.

45. Plaintiff and his minor son were in the cage that appears to have been designed to contain animals, and the store security videotapes will confirm that the Plaintiff and his minor son were not treated like human beings.

46. The only one who was wearing a face mask was the State Police Officer. When the State Police Officer arrived, he told the Plaintiff that he was not going to take the Plaintiff to jail because of the pandemic, and that the Plaintiff would receive a citation in the mail of when to appear in Court which, by the way, never, ever happened.

47. Instead, a warrant was issued for the Plaintiff's arrest instead of waiting for a letter like the State Police Officer promised the Plaintiff in front of the two security guards who witnessed the conversation.

48. Plaintiff was told by store personnel that the security guard, who is Black, likes to target Black and Hispanic shoppers. Plaintiff was also told that the security guard was a cocaine dealer. The Plaintiff does not know this to be a fact, but this is what Plaintiff was told by people who know the security guard.

49. There was no oxygen in the holding area, and the security videotape will show that the security guard had to keep going out by the doorway to get oxygen. This is exactly what the security tape is going to show, but the Plaintiff who was 77 years old at the time was forced to sit there and inhale all the toxic germs that the security guard was exhaling which were passed on to the Plaintiff and his minor son. This is exactly what the store security tapes are going to show.

50. At no time did the store security personnel ever offer medical assistance to the Plaintiff and his minor son. The Plaintiff was forced to sit there and be exposed to the spread of germs.

51. It was either the next day or the day thereafter when the Plaintiff and his minor son were forced to go to St Luke's emergency Care Center on MacArthur Blvd in Allentown, PA. Medical records will show and prove that the Plaintiff and his minor son were so sick that the medical personnel at St Luke's hospital forced the Plaintiff and his minor son to sit out in the car because, they believed the Plaintiff and his minor son were contaminated with the coronavirus.

52. The Plaintiff and his minor son sat there for hours and were finally tested for the coronavirus. After that, they had to be quarantined for 10 or 15 days. This hardship was unbearable and left a lifelong impression on the minds of the Plaintiff and his minor son. They were so sick that they were both given antibiotics to combat whatever disease the Plaintiff and his minor son contracted from Walmart security personnel.

53. This Honorable Court will see through the store security videos how the Plaintiff and his minor son were detained unlawfully because, the store security officer refused to allow the Plaintiff to pay for the items that he did not ring up correctly.

54. **The Plaintiff will show through the store security tape there was a store manager standing over the Plaintiff and his minor son while they were ringing up the items, and at no time did this assistant manager stop the Plaintiff to prevent the Plaintiff from inadvertently not ringing up items because of Plaintiff's exposure and fear.**

55. Plaintiff believes that he was set up by Walmart store personnel because, the security tapes will show that the female assistant manager was standing within two feet of the Plaintiff and his minor son: any closer, she could have kissed them.

56. If the store personnel would have stopped the Plaintiff from ringing up the items incorrectly or not ringing the items up at all, the store personnel would have learned that the Plaintiff was behind two people who may or may not have had contact with the Coronavirus.

57. When the Plaintiff and his minor son were taken like two dogs and placed in what is no more than a dog pen, whatever disease that the store personnel

8

had was placed directly into the face of the Plaintiff and his minor son; hospital records will prove this to be a fact. In that, Walmart has no defense.

58. If the Plaintiff was doing something illegal, the store personnel certainly did not do anything to stop the Plaintiff; therefore, it appears to have been a form of entrapment, and entrapment by any other name is still unlawful.

59. At no time was the Plaintiff and his minor son ever given any medical aid. The security tape will show that the Plaintiff and his minor son were treated like less than a common dog, and the security tapes will not lie.

60. If a Jury ever sees the mistreatment of the Plaintiff, the Plaintiff has no doubt in his mind that a Jury will award him 10 or 15 million dollars for putting the Plaintiff's and his minor son's lives in direct danger. The store security tapes will show and prove this to be a fact.

61. To this very date, the Plaintiff is still under psychiatric care because of what was done to him by Walmart Personnel, and the Plaintiff is still sedated with Xanax and two other types of medication to control his nerves from the nightmares he has every week from his unlawful detention.

62. Plaintiff's psychiatrist and medical personnel will tell this Honorable Court under oath that what was done to the Plaintiff was inhumane because, the Plaintiff is Dyslexic, and due to his age, he does not operate with his full faculties. That is not a fault of the Plaintiff, but it is something that comes with age which this Court should be more than familiar with.

63. This mistreatment by the Defendants caused the Plaintiff and his minor son to suffer a very bad flu like infection. Medical records will show that this flu like infection lasted almost two months with high fever, runny nose and headaches. This is what the Defendants did to the Plaintiff and his minor son. Medical records will confirm the same.

**Argument**

64. First and foremost, Plaintiff will file an amended pleading citing additional facts because, the circumstances surrounding the mistreatment of the Plaintiff and his minor son are ongoing. Whereas, the Plaintiff and his minor son both have nightmares concerning their horrible mistreatment and false incarceration.

65. The Defendants did not offer the Plaintiff or his minor son any medical assistance, nor did they offer to call a doctor.

66. It was cruel and inhumane to force the Plaintiff and his minor son to sit in a seat for two hours without being able to stand up or move. The store security videos will show this horrible form of punishment.

67. Through the mistreatment of the Plaintiff and his minor son, it can be argued that they were both the victims of racial discrimination because, the Plaintiff does not believe a White man would be treated the same way.

68. Walmart has a lot of money, and they have a tendency to push all Courts around, and they believe that because of their wealth, they can do anything they so desire against people of Color, the Elderly and the impoverished.

69. These Defendants, through their actions, violated the Plaintiff's and his minor son's Civil Rights and Liberties by unlawfully detaining them without probable cause.

70. The Defendants never gave the Plaintiff an opportunity to explain the circumstances. In that, the Plaintiff has never been charged with shoplifting in his life.

71. The Plaintiff had in his possession, two gift cards from Walmart and $600 in his wallet in cash.

72. The Plaintiff simply made a mistake because, he was in fear for his life and safety and the life and safety of his minor son.

73. The Plaintiff never, ever left the store with the items he miscalculated in ringing up the purchase.

74. It must be noted that the exit door to the store was approximately 10 feet from the Plaintiff and his minor son, but the Plaintiff's minor son was confused: instead of going to the service desk, he went toward the door which was approximately 100 feet away.

75. The security video will show that the Plaintiff, if he were stealing, would have taken the nearest exit which was 10 feet away.

76. The Defendants punished the Plaintiff before the Plaintiff was ever charged or convicted.

77. The Plaintiff was stripped of his **Due Process Rights**; he was stripped of his **1st Amendment Rights**; he was told he could not talk nor move but had to remain still like the Plaintiff and his minor son were common dogs.

78. Plaintiff argues that he does not believe any White person would be treated in such an inhumane fashion. A recovery of records from the Defendants would prove the same.

79. The Plaintiff believes that he was the product of a set up, a form of entrapment that is designed to go after people of Color. The assistant manager was standing right next to the Plaintiff and his minor son and saw the Plaintiff having an anxiety attack and offered the Plaintiff no help. The security videos will show this to be a fact.

80. All the Plaintiff wanted to do was get out of harm's way of two people who stated they may have the Coronavirus.

81. The security videos will support this contention and argument. Plaintiff believes that if a Trial by Jury is afforded him and his minor son, Walmart has no defense because, the supervisor standing next to the Plaintiff made no good faith effort to correct the Plaintiff in how Plaintiff was ringing up the items.

82. Several months before this incident, the Plaintiff's minor son was ringing up items and he left the building by mistake so, the next day the Plaintiff brought the items back and paid the full amount of money. Luckily the Black security officer was not around or the Plaintiff's minor son would have been arrested for making a mistake that people who are mentally challenged normally make.

83. The Defendants are guilty of Elder Abuse and Selective Discrimination. The Defendants are guilty of Child Abuse with regards to a child who has Autism and takes medication for the same.

84. The Defendants have no policy in place to protect mentally-challenged customers or children with a Disability. A show of records will prove that the Defendants operated their business outside of the scope of Pennsylvania's laws concerning Disabled Persons and Senior Citizens.

85. Security records will show that the security officer was unable to stand in the hostage room without grasping for air and leaving for air, but the Plaintiff and his minor son were not afforded that same medical opportunity, and as a result, the Plaintiff and his minor son became gravely ill due to the wonton and deliberate negligence of the Defendant, and the security video will prove this to be a fact.

86. Plaintiff has a valid reason for mistakenly ringing up and not ringing up items i.e. he was in fear for his life, and the security officer never asked the Plaintiff why he mistakenly rang up the items or did not ring up the items.

87. It is argued that the security officer and the assistant manager had a Rush to Judgment and laid out a platform for entrapment.

88. Plaintiff also argues that Walmart personnel, security and assistant managers lack training to help those who are having an anxiety attack and a nervous breakdown, but instead, there is a Rush to Judgment to entrap, punish and arrest an innocent, disabled, senior citizen.

89. The Defendants have no program in place that protected the Plaintiff and his minor son during a pandemic. Security videos will show that there was no cart washed down or sanitized. Security tapes will also show that store personnel, especially the security personnel, did not wear masks as was required by law at that time.

90. The Defendants Walmart knew or should have known that they had and maintained a practice and policy that is indifferent to the Civil Rights and Liberties of the Plaintiff and his minor son.

91. Defendants knew or should have known that their employees lacked training and were unskilled personnel who, through their negligence caused the Plaintiff and his minor son to suffer irreparable harm and caused each of them to become very sick through an unlawful detention.

92. Plaintiff believes that if he were a White person, he would have never been mistreated. i.e. Walmart Corporation in this particular area has a distinct intention to single out minority persons even if they are elderly and very sick or have an ailment that is beyond the control of the elderly person.

93. Plaintiff's claims are not bland allegations, they are facts that can be proven by the store videos, by medical records and by doctor's reports.

94. The Plaintiff simply wants to have a Trial by Jury so he can explain what happened to a Jury of his peers because, there is no question, no argument that the Defendants had a practice and policy at that time which was indifferent to the Plaintiff's and his minor son's Civil Rights and Liberties.

95. The Plaintiff was denied medical attention. Plaintiff's minor son was denied medical attention. Plaintiff and his minor son were not ever offered any water in the almost two hours that they were unlawfully detained by Walmart security personnel.

96. It must be noted that the Plaintiff had an oxygen tank in his car and was denied the right to go retrieve that oxygen tank.

97. The Plaintiff has a sleep apnea machine, and an oxygen machine next to his bed which will establish that the Plaintiff has very bad lungs and these Defendants compounded those injuries by their unlawful mistreatment of the Plaintiff and his minor son.

98. At no time did the security officer ever ask the Plaintiff if he was having a problem. Each time the Plaintiff went to Walmart, he may have inadvertently rang up items other times inappropriately for fear of being infected with the Coronavirus.

99. This Court must keep in mind the Defendants did not nor do not have a policy to protect those who are mentally challenged or elderly.

100.  It would appear that the **14th Amendment** was violated; the **8th Amendment** was violated; the **1st Amendment** was violated, and the **4th Amendment** was clearly violated due to the unlawful practices of the Defendants who lack training for their employees, and as a result of a lack of training, the Plaintiff and his minor son suffered harm that is beyond repair.

101.  The Plaintiff had reason to believe that he and his minor son would be treated humanely, in that, it is argued that Walmart personnel lacked training to detect when a person is having an anxiety attack, and as a result of this lack of training, the Plaintiff was arrested, mistreated, detained, unlawfully incarcerated, denied his oxygen tank and held unlawfully in a holding area that was not fit for a dog.

102.  The Plaintiff was maintained by the Defendants in an area that had no oxygen, and the security videos will show that not even the security personnel could stay in the room without grasping or reaching for fresh air. This is exactly what the store videos will show.

103.  The Defendants maintain a practice and policy that is indifferent to the Plaintiff's and his minor son's Civil Rights and Liberties.

104.  The Defendants were in violation of Pennsylvania's own law concerning masks. i.e. the personnel were not wearing any masks, and therefore, exposing whatever disease they had to a senior citizen and his mentally challenged son.

105.  **The Plaintiff argues to this Court that he does not want this case to be fixed**. These Defendants did what they did and they relied upon their unlimited cash flow to intimidate and get the Court to turn a blind eye against their inhumane atrocity.

106.  Plaintiff will make this case go viral so that any other persons of Color who were treated in the same fashion as the Plaintiff can be called as a witness to prove that Defendants maintain a practice and policy that is indifferent to the Plaintiff's and his minor son's Civil Rights and Liberties.

107.  Security videos will show that the Plaintiff was never advised of his Miranda rights neither by the State Police nor by the store security personnel.

108. Plaintiff will sue the store security persons in their personal capacity and anyone who acted in concert with them.

109. The Plaintiff will retain an attorney to step in and represent him in this lawsuit because, this is a case that these Defendants cannot win, and as this Court knows, if the Defendants were violating the laws of the State of Pennsylvania themselves, how would they have standing to sit in Judgment of an innocent man who was having an anxiety attack and the Defendants' personnel lacked training to give aid to a senior citizen and a disabled child.

110. Plaintiff and his minor son were stripped of all their human rights and their Civil Rights simply because the Defendants had a Rush to Judgment. In that process they caused the Plaintiff and his minor son to suffer irreparable harm.

111. It is extremely clear that the law states if the Defendants did not know they should have known that they were violating human rights when a lack of training will prove that the Defendants were negligent from the very onset of their unlawful actions.

112. Plaintiff will file an additional argument once he retains Counsel to represent him and his minor son in this matter.

113. Plaintiff will have this case go viral so that the World knows that Walmart personnel did not have any face masks and in that they placed innocent lives in jeopardy, and the store security videos will back this argument up 100 million percent.

114. This argument is a Constitutional Civil Rights Argument, not a State Court Matter, not a Personal Injury.

115. Plaintiff will retain counsel to represent him and his minor son in this matter.

116. A video is worth a million words. As long as the Defendants did not destroy the evidence, the Defendants have no defense.

117. Security personnel nor any store personnel ever asked the Plaintiff if he needed to see a doctor or needed medical help.

118.    The Plaintiff can prove by doctor, after doctor, after doctor that he suffers from anxiety attacks, and that the Defendants lacked training to detect a person who is in need of medical attention.

119.    Plaintiff will want to take the Depositions of the Defendants 10 days after the filing of this Complaint. The Defendants can settle this case or go to trial.

120.    Defendants have a long history of trying to strongarm Courts against indigent poor persons.

121.    Defendants lack probable cause to detain the Plaintiff and his minor son because, there was never a crime committed.

**Wherefore,** Plaintiff asks $5 Million punitive and $5 Million nominal damages against the Defendants and in favor of the Plaintiff for the irreparable harm and mistreatment of the Plaintiff while acting in their official capacity and at all times relevant violating the laws of the State of Pennsylvania.

Respectfully Submitted,

August 18, 2021

_/s/ Jimi Rose_
Jimi Rose

## In the United States District Court
## For the Eastern District of Pennsylvania

Jimi Rose
       Plaintiff

       No: _____

v.               **Jury Trial Demanded**
       **Emergency Status**

Walmart Corporation;
Jane Doe;
John Doe Security Guard 1;
John Doe Security Guard 2;
John Doe Security Guard 3;
John Doe Security Guard 4;
John Doe Security Assistant;
       Defendants

### Proof of Service

This 9th day of September, 2021, the undersigned certifies Plaintiff's **Complaint** will be sent to the U.S. district Court for the Eastern District of Pennsylvania.

Respectfully Submitted,

       */s/ Marcus A. Henry, Jr.*
       Marcus A. Henry, Jr.

Jimi Rose
911 Barnsdale Rd.
Allentown, PA 18103



RECEIVED
SEP 13 2021

Prothonotary's Office
United States District Court
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106

U.S. POSTAGE PAID
FCM LG ENV
BETHLEHEM, PA
18016
SEP 09, 21
AMOUNT
$1.96
R2300A155499-40

1000   19106

U.S.M.S. X-RAY