IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JIMI ROSE, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-4092 |
| | : | |
| WALMART CORPORATION, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**                                                                                **JANUARY 19, 2022**

        This matter comes before the Court by way of a Complaint (ECF No. 2) submitted by *pro se* Plaintiff Jimi Rose, a prolific litigant in this Court, against Walmart Corporation and several Walmart employees. Also before the Court is Rose's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1). Because it appears that Rose is unable to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, Rose's federal claims will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and his state law claims will be dismissed for lack of jurisdiction without prejudice to Rose's right to proceed in an appropriate state court.

**I.    FACTUAL ALLEGATIONS[1]**

        In the Complaint, Rose describes that he "has 2 bad lungs, a bad heart, high blood pressure, sugar diabetes and a bad kidney," and explains that in the spring and early summer of 2020 he was "having a very hard and difficult time dealing with the pandemic" and "lived his

---

[1] The factual allegations set forth in this Memorandum are taken from Rose's Complaint. (*See* ECF No. 2).

life in fear." (*See* ECF No. 2, ¶ 19.)[2]  He feared of "being infected with the Coronavirus[,]" so much so that he "sprayed his home inside and out with bleach every week to protect himself and his minor son[.]" (*Id* at ¶ 20.)  Rose went to the Walmart "store located at 1091 Mill Creek Rd[.]" in Allentown, Pennsylvania on or about May 7, 2020.  (*Id.* ¶ 18.)  He and his minor son "were standing in the checkout line," when they "encountered a . . . woman who was only about 2 feet in front of them[.]" (*Id.* ¶ 24.)  Rose asserts that the woman said to a man accompanying her that "his sister had . . . coronavirus" and that the woman then "tried to get" the man to stand closer to Rose and his son.  (*Id.* ¶ 24.)  Rose further alleges that the woman stated that "she believed she may contracted the coronavirus" herself.  (*Id.* ¶ 25.)

Upon hearing "these remarks, . . . [Rose claims that he] hit the panic button in his mind and became so terrified that . . . [he] did not know which way to turn." (*Id.* ¶ 26.)  Rose contends that in his panicked state, he "arrived at the self-checkout stand" and "just started ringing things up," but that he "did not know what he was ringing up." (*Id.* ¶ 27.)  Rose alleges that he simply "wanted to get out of harm's way" and "to get out of the Walmart store and out of danger[,]" presumably that posed by the woman and the man who were standing too close and potentially, as Rose perceived it, infected with coronavirus.  (*Id.* ¶¶ 24-27.)  At that time, Rose claims that he "was having a panic attack and did not have his medicine with him[,]" which caused him to just begin "ringing [his] items up in a fashion that he had no way of knowing what he was doing right or wrong" because "[a]ll . . . [Rose] wanted to do was get away from the two people."  (*Id.* ¶¶ 27-28.)  Rose alleges that because he was "in terrible fear for his life and the life of his minor son[,]" he "did not ring up the items correctly" and determined that they "would have to go to the

---

[2]  Where the Court cites a page number rather than a paragraph number, the Court will adopt the pagination supplied by the CM/ECF docketing system.

service counter to re ring the items" in question. (*Id.* ¶ 29.) Rose alleges that he then "proceeded to walk to the service desk so he could re ring the items . . . that he may have missed or rang up several times" but that his "extremely hyper" son who "suffers from ticks and stimming" started going to the door. (*Id.* ¶¶ 30-32.) At that point, Rose claims that he "called his son back to bring the cart to him so . . . [Rose] could go to the service counter and pay for the items." (*Id.* ¶ 32.) However, Rose alleges that "a Black Security Guard stopped . . . [Rose's] . . . son and took possession of the shopping cart" while Rose's son was walking to him. (*Id.* ¶ 33.)

Despite Rose's attempts to explain that he was heading to the service counter to pay for the items and that he had money, Rose alleges that the "security guard instructed . . . [Rose] to follow him to a holding area for people they intend to arrest." (*Id.* ¶¶ 34, 36.) Rose claims that he and his son were then taken to a holding area that was no more than 2.5 feet wide with a camera directly in his face where they spent several hours with the security guard and "his associate" – neither of whom wore a mask – who "kept blowing their breath" in the faces of Rose and his son. (*Id.* ¶¶ 38-39.) Later, a state police officer arrived and told Rose that "he was not going to take" Rose "to jail because of the pandemic, and that . . . [Rose] would receive a citation in the mail of when to appear in Court[.]" (*Id.* ¶ 46.) "Instead, a warrant was [subsequently] issued for . . . [Rose's] arrest[.]" (*Id.* ¶ 47.)

With respect to his alleged arrest, public records reflect that Rose entered a guilty plea on October 22, 2020 to one count of retail theft by under ringing in violation of 18 Pa. S. A. § 3939(a)(4). *See Commonwealth v. Rose*, MJ-31302-NT-0000399-2020 (C.P. Lehigh County). A few weeks later, on or about November 3, 2020, Rose filed a motion in the Lehigh County Court of Common Pleas seeking to withdraw his guilty plea. *See Commonwealth v. Rose*, CP-39-MD-0001962-2020, (C.P. Lehigh County). Rose's motion to withdraw his guilty plea was denied on

or about December 10, 2020.  *See id.*  Rose appealed this decision, among other rulings by the Lehigh County Court of Common Pleas, and his appeal remains pending at this time.  *Id.*

Based on these allegations, Rose brings this action for "'Federal Civil Rights Violations'" including alleged violations of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.  (ECF No. 2 at ¶¶ 1, 9, 77, 100, 107.)  Rose seeks $5 million in punitive damages and $5 million in nominal damages against Defendants for "irreparable harm and mistreatment of . . . [Rose] while acting in their official capacity and at all times relevant violating the laws of the State of Pennsylvania."  (*Id.* at 16.)

## II.     STANDARD OF REVIEW

The Court will grant Rose leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Rose is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v.*

*Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Rose repeatedly alleges that the Complaint in this case is one for "'Federal Civil Rights Violations[,]" (*see, e.g.,* ECF No. 2 ¶¶ 1-7, 9-11, 13-17), and asserts that his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments were violated.[3] (*See id.* ¶¶ 1, 9, 77, 100, 107.) Rose specifically cites 42 U.S.C. §§ 1981, 1985, 1986, 1988 as a basis for his claims, (*see id.* ¶ 6), and while he does not explicitly state that he seeks to bring his claims in this action pursuant to 42 U.S.C. § 1983, the Complaint, liberally construed, can fairly be said to raise such claims.[4] The Court address each in turn.

### A. Rose's Claims Under § 1981

Section 1981 provides that

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

---

[3] Rose is the only named Plaintiff in this action, but it remains unclear from the Complaint whether Rose seeks to raise these claims solely on his own behalf, on behalf of his minor son, or both. To the extent Rose seeks to raise any claims on behalf of his minor child, he is prohibited from doing so. A *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself. Accordingly, because Rose is appearing *pro se* and is not an attorney, he may not bring claims on behalf of his minor child. *See Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991). Therefore, throughout this Memorandum, the Court's analysis focuses on these claims as though they are brought solely on Rose's own behalf.

[4] Throughout the Complaint, Rose asserts that his "human rights" were violated and specifically cites to the United Nations' Universal Declaration of Human Rights. (*See* ECF No. 2 ¶¶ 11, 14, 16, 110-111.) To the extent Rose's Complaint can be construed as attempting to bring claims for "human rights" violations pursuant to the Universal Declaration of Human Rights, any such claims are not plausible and will be dismissed. As the United States Court of Appeals for the Third Circuit has recognized, "the Universal Declaration of Human Rights is a non-binding declaration that provides no private rights of action." *See United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)) (explaining that the Universal Declaration of Human Rights is merely a resolution of the United Nations and "does not of its own force impose obligations as a matter of international law").

5

> evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C § 1981. This Reconstruction-era statute, along with several others, was enacted to effectuate the aims of the Thirteenth and Fourteenth Amendments to the Constitution. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796-97 (3d Cir. 2001) (noting that the legislative history of § 1981, derived from the Civil Rights Act of 1866 and from the reenactment of Section 1 of the 1866 Act in 1870, makes clear Congress's intent to enact "sweeping legislation implementing the [T]hirteenth [A]mendment to abolish all the remaining badges and vestiges of the slavery system") (quoting *Mahone v. Waddle*, 564 F.2d 1018, 1030 (3d Cir. 1977)). To state a claim under § 1981, a plaintiff "must allege facts in support of the following elements:  (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts . . . ." *Brown*, 250 F.3d at 797 (alterations in original) (quoting *Yelverton v. Lehman*, No. Civ. A. 94-6114, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1996), *aff'd. mem.*, 175 F.3d 1012 (3d Cir. 1999)); *see also White v. Wireman*, Civ. A. No. 16-675, 2018 WL 1278588, at *9 (M.D. Pa. Feb. 8, 2018), *report and recommendation adopted*, 2018 WL 1251786 (M.D. Pa. Mar. 12, 2018) (specifying the enumerated activities as enforcing contracts, the ability to sue and be sued, and give evidence).

---

"District courts throughout this Circuit have routinely dismissed claims brought under the Universal Declaration of Human Rights with prejudice for failure to state a claim or as legally frivolous." *See Moore v. Montgomery Cty. Corr. Facility*, Civ. A. No. 20-5172, 2021 WL 5177703, at *4 (E.D. Pa. Nov. 8, 2021) (collecting cases). Accordingly, any claims Rose seeks to bring under the Universal Declaration of Human Rights will be dismissed with prejudice for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) as leave to amend would be futile.

While Rose's Complaint does allege that he is a member of a racial minority, (*see* ECF No. 2 ¶¶ 18, 67, 92 ) he has failed to state a plausible claim with respect to the remaining elements of a § 1981 claim.  Rose does not allege that Defendants committed any intentional act to discriminate against him based on his race with respect to the events of May 7, 2020 at Walmart.  Instead, Rose alleges in broad, conclusory terms that as a person of color who was "shopping while being 'Black'", he was the victim of racial discrimination and that a white man would not have been treated the same way.  (*See generally id.* ¶¶ 7, 18, 67, 78, 92.)   Rose offers no facts to support his conclusory allegation of generalized racial bias, which are insufficient to satisfy the elements of a claim under § 1981.  *See Spence v. Caputo*, Civ. A. No. 12-1077, 2015 WL 630294, at *27 (W.D. Pa. Feb. 12, 2015) (dismissing § 1981 and § 1982 claims because plaintiff's claims were mere speculation and did not allege which of the enumerated rights under these sections were allegedly violated, which defendants were involved, the dates that any violations occurred, nor were facts alleged to show that any deprivation of the enumerated rights was racially motivated); *see also Davis v. Samuels*, 962 F.3d 105, 115-16 (3d Cir. 2020) (affirming dismissal on the merits of plaintiff's § 1981 claim against federal defendants for failure to state a plausible claim of race discrimination).  Most importantly, even if Rose had sufficiently alleged an intentional act of discrimination based on his race, his § 1981 claim still fails because there is no plausible allegation that the discrimination concerned one or more of the activities enumerated in the statute, namely making or enforcing contracts, or the ability to bring or defend a lawsuit, or give evidence.  Accordingly, Rose has failed to state a plausible claim under § 1981.  Given the absence of any connection to one or more of the enumerated activities, this claim will be dismissed with prejudice as any attempt to amend would be futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend claims

dismissed on screening should be generally be granted "unless amendment would be inequitable or futile.")

### B. Rose's Conspiracy Claims Under §§ 1985 and 1986

Rose asserts claims pursuant to §§ 1985 and 1986. (ECF No. 2 ¶ 6.) Section 1985(3) creates a cause of action against persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ." 42 U.S.C. § 1985(3). To state a plausible claim under § 1985(3) a plaintiff must allege the following elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). Significantly, "'[t]he [statutory] language requiring intent to deprive of equal protection . . . means that there must be some racial . . . invidiously discriminatory animus behind the conspirators' action.'" *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Moreover, a plaintiff must allege specific facts to sustain a § 1985(3) claim:

> With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals.

*Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972); *see also Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those

addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient.")

"[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[Section] 1986 constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and 'transgressions of § 1986 by definition depend on a preexisting violation of § 1985." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)). In other words, "to maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy." *Id.* at 1295 n.5.

Rose does not allege a plausible claim under § 1985. The Complaint does not even contain the word conspiracy or conspire, and makes only a single passing reference to § 1985 in its jurisdictional paragraph. (*See* ECF No. 2 ¶ 6.) Rose has not alleged facts regarding the formation of a conspiracy between any Defendants or any other individuals. He fails to specify the nature and purpose of any alleged conspiracy against him, and fails to allege plausibly that racial animus motived the conspiracy. Accordingly, these claims are also implausible and will be dismissed with prejudice. *Cf. Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 592 (D.N.J. 2003), aff'd, 137 Fed. Appx. 482 (3d Cir. 2005) (dismissing § 1985 conspiracy claim for failure to state a claim where plaintiff, an indigent, African-American woman, asserted that a medical center and several doctors conspired to deprive her of her Medicaid benefits because she did "not provide a factual basis for her claims that the alleged conspiracy was motivated by 'racial . . . or otherwise class-based' animus."). Because Rose has failed to allege the existence

of a § 1985 conspiracy, he also cannot maintain a plausible § 1986 claim and this claim will similarly be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim. Because Walmart, as a business entity, cannot conspire with its own employees, *cf. Reeser v. NGK Metals Corp.*, 247 F. Supp. 2d 626, 630-31 (E.D. Pa. 2003) (a corporation cannot conspire with its employees unless the latter are acting for personal reasons), any attempt to amend either the § 1985 or § 1986 claim would be futile. Accordingly, Rose will not be granted leave to amend these claims.

      C.      **Rose's Claim Under § 1988**

Rose also may be attempting to assert a claim under 42 U.S.C. § 1988. (ECF No. 2 ¶ 6.) Section 1988(b) provides in pertinent part that "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b). Subsection (c), cited by Rose, further provides that "[i]n awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 or 1981a . . . , the court, in its discretion, may include expert fees as part of the attorney's fee." 42 U.S.C. § 1988(c). While he only cites subsection (c), it is unclear whether Rose is seeking an expert fee under that provision or attorney's fees more broadly under subsection (b). In any event, Rose's attempt to bring a claim pursuant to § 1988 in this case fails because § 1988 does not authorize an independent cause of action. *See Moor v. County of Alameda*, 411 U.S. 693, 702 (1973) (Section 1988 does not create an independent federal cause of action and noting that it was "intended to complement the various acts which do create federal causes of action for the violation of federal civil rights."). Furthermore, Rose has failed to allege a plausible claim under either §§ 1981, 1983, 1985, or 1986 and "in the absence of another, viable civil rights claim,

10

[Rose] may not sue for a violation of Section 1988 alone." *Banks v. Owens*, Civ. A. No. 17-5423, 2018 WL 6249709, at *6 (E.D. Pa. Nov. 29, 2018). Finally, even if Rose had alleged a plausible civil rights claim, he would still not be entitled to recover reasonable attorney's fees under § 1988 because he is a non-lawyer, *pro se* litigant. *See Pitts v. Vaughn*, 679 F.2d 311, (3d Cir. 1982) (holding that § 1988 "does not entitle a non-lawyer, pro se litigant to attorney's fees"). Accordingly, any claim under § 1988 is dismissed with prejudice.

### D. Rose's Claims Under § 1983

Rose's Complaint, construed liberally, could fairly be understood as an attempt to bring a claim against Walmart and its employees pursuant 42 U.S.C. § 1983, the vehicle by which federal constitutional claims are brought in federal court. Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Whether a defendant is acting under color of state law — *i.e.*, whether the defendant is a state actor — depends on whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). Pursuant to § 1983, action under color of state law requires that the one liable under that statute have exercised power possessed by virtue of state law and made possible only because the

wrongdoer is clothed with the authority of state law. *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011).

### 1. Section 1983 is Not Applicable to Private Conduct

"Significantly, [Section] 1983 does not apply to merely private conduct, no matter how discriminatory or wrongful." *Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999))(internal quotations omitted); *see also Rodriguez v. Shoprite Supermarket*, Civ. A. No. 19-6565, 2020 WL 1875291, at *2 (E.D.N.Y. Apr. 15, 2020) ("Private conduct is generally beyond the reach of § 1983.") Based on the allegations of the Complaint,[5] neither Walmart, nor any of the private security guards it employs, are subject to liability under § 1983 because they are not state actors, but rather a private discount retailer and its employees.

District courts throughout the country have consistently found that private retail stores and the private security personnel they employ are not state actors for purposes of § 1983. *See Rodriguez*, 2020 WL 1875291, at *2 (concluding that plaintiff failed to allege state action on the part of a private supermarket and several of its employees); *see also*, *Belcher v. Wal-Mart Stores, Inc.*, Civ. A. No. 20-0194, 2020 WL 5606894, at *2 (D. Alaska Sept. 18, 2020) (noting that plaintiff failed to state a viable § 1983 claim because "Walmart is a private party; [and] it does not act with the virtue or authority of state law, and therefore, it is not a state actor."); *Grant-Davis v. Fortune*, Civ. A. No. 15-4211, 2015 WL 12868172, at *1-*3 (D.S.C. Nov. 20, 2015),

---

[5] The Complaint does not allege facts to support an inference that there is a "close nexus" between the private business conduct of Walmart and its employees, and the state itself such that the challenged action can fairly be treated as that of the state. *See Leshko*, 423 F.3d at 339. Rose also fails to allege that Walmart or its employees had any connection to a state, county, or local governmental entity, and none of his allegations suggest that Walmart or its employees were operating as anything other than private actors.

*report and recommendation adopted*, 2015 WL 12868171 (D.S.C. Dec. 7, 2015), *aff'd*, 645 F. Appx. 288 (4th Cir. 2016) (finding that all defendants, including Walmart and a Walmart employed security guard, were "private actors" and therefore not state actors subject to liability under § 1983 and dismissing plaintiff's claim for alleged violations of his constitutional rights); *Fletcher v. Walmart Stores, Inc.*, Civ. No. A. 15-1859, 2006 WL 2521187, at *4 (S.D.N.Y. Aug. 28, 2006) (recognizing that Walmart Stores, Inc. and several of its employees, including its private security guard, were not state actors, nor were they acting under color of law); *Guiducci v. Kohl's Dep't Stores*, 320 F. Supp. 2d 35, 36, 38 (E.D.N.Y. 2004) (concluding that the "actions of the Kohl's store security guard towards Plaintiffs' [minor] daughters . . . were not the actions of the state, and [that] they implicate[d] neither the Fourth Amendment nor 42 U.S.C. § 1983" in a case where the girls "were caught shoplifting by a (female) security guard" who "forced the girls into an office, interrogated them, and made them strip to their underclothes to recover the store's merchandise" without "informing either their parents or the police of their apprehension" and who contacted the police after the merchandise was returned, which resulted in their arrest); *cf. Rojas v. Alexander's Dep't Store, Inc.*, 654 F. Supp. 856, 858 (E.D.N.Y. 1986) (declining to dismiss alleged shoplifter's § 1983 claim because a security guard employed and paid by the department store had been sworn in as a "special patrolman" by the New York City Police Department which rendered the guard a quasi-peace officer constituting state action and implicating the Fourth Amendment).

Rose has not plausibly alleged facts demonstrating that Walmart or its security guards are state actors. Walmart is a private discount retailer, and there are no allegations in the Complaint that Walmart has any connection to a state, county, or local government entity which suggest that its private business conduct can be treated as that of the state. The same is true with respect to

13

any of the private security guards Walmart employed. Accordingly, any claims Rose seeks to bring under § 1983 against Walmart and the unnamed security guards will be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim.[6] Rose will not be granted to leave to amend on this issue as any attempt to amend would be futile.

### 2. Rose's Claims are Barred Under *Heck*

Even if Defendants could be deemed state actors, "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). Rose repeatedly asserts that he was unlawfully detained, arrested, and incarcerated by Walmart and its security personnel. (*See* ECF No. 2 at ¶¶ 40-41, 53, 58, 61, 69, 91, 95, 100-101, 111.) However, public records make clear that Rose was later criminally charged in state court for theft by under ringing and that his guilty plea remains intact and has not been

---

[6] Even if the Walmart and the security guards were deemed state actors, Rose's allegations that Walmart failed to implement or follow certain public health protocols regarding the transmission of COVID-19 do not state a plausible claim under § 1983 because those allegations sound in negligence and do not support a violation of Rose's federal constitutional rights. *See Canton v. Harris,* 489 U.S. 378, 387 (1989).

14

invalidated.  *See Commonwealth v. Rose*, MJ-31302-NT-0000399-2020 (C.P. Lehigh County); *Commonwealth v. Rose*, CP-39-MD-0001962-2020, (C.P. Lehigh County).   Accordingly, any civil rights claims based on the alleged unconstitutionality of his plea and sentence are not cognizable in a civil rights action at this time and must be dismissed.

### E.     Rose's State Law Claims

Rose explicitly, and repeatedly, asserts that this case is "not a State Court Proceeding" and is not a "personal injury" matter.  (ECF No. 2 ¶ 14); (*see also* i*d.* ¶¶ 2, 114.)  He also makes clear that the "personal injury . . . matter is being handled in the State Court."  (*Id.* ¶ 14.) However, he also alleges multiple times that Defendants violated various Pennsylvania state laws.  (*See id.* ¶¶ 84, 89, 104, 109.)  He further alleges in a conclusory fashion Walmart is guilty of "Elder Abuse" and "Child Abuse" and "operated [its] business outside of the scope of Pennsylvania's laws concerning Disabled Persons and Senior Citizens."  (*Id.* ¶¶ 83-84.) Moreover, Rose's repeated allegations regarding Walmart's alleged failure to implement and follow certain COVID-19 safety protocols sound in negligence under state tort law.

Liberally construed, the Complaint can fairly be understood to assert several claims under Pennsylvania state law.  The Court, however, declines to exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367, having dismissed Rose's federal claims.  Accordingly, the only independent basis for jurisdiction over any state law claims is 28 U.S.C. § 1332, which provides that a district court can exercise subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for

jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business. . . . And a partnership, as an unincorporated entity, takes on the citizenship of each of its partners." *Zambelli*, 592 F.3d at 419 (citations omitted). "The burden of establishing federal jurisdiction rests with the party asserting its existence." *Lincoln Ben. Life Co.*, 800 F.3d at 105 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

 Rose does not adequately allege the citizenship of any of the parties to this action. With respect to his own citizenship, Rose does not set forth the state where he is domiciled as is required for diversity jurisdiction.[7] With respect to the citizenship of Walmart and the unnamed security guards, Rose's Complaint is silent and makes no allegations regarding the citizenship of these Defendants. Accordingly, Rose has failed to meet his burden of demonstrating that this Court has subject matter jurisdiction over any state law claims he may be raising. *See Lincoln Ben. Life Co.*, 800 F.3d at 105. Thus, all state law claims will be dismissed for lack of subject

---

[7] The Court notes that Rose provided a Pennsylvania address as his address of record, but that is not a sufficient allegation from which the Court can determine his citizenship for purposes of diversity.

matter jurisdiction without prejudice to Rose's right to assert those claims in an appropriate state court.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will grant Rose leave to proceed *in forma pauperis*, dismiss Rose's federal claims with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Rose will not be granted leave to amend because amendment of his claims, other than any claim under § 1983, would be futile. *See Grayson*, 293 F.3d at 114. Rose may not amend his § 1983 claim either since any such claim is currently subject to the *Heck* bar and must be brought in a new civil action if that bar is ever removed. Rose's state law claims will be dismissed for lack of subject matter jurisdiction without prejudice to Rose's right to raise those claims in an appropriate state court. An appropriate Order follows.

                              **BY THE COURT:**


                              /s/ Jeffrey L. Schmehl
                              **JEFFREY L. SCHMEHL, J.**